UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S & S COMMUNICATION SERVICES, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLEARFIBER, INC., a West Virginia corporation, DBI Networks, LLC, a West Virginia limited liability company, HENSON, LLC, a West Virginia limited liability company, and TIMOTHY CHAD HENSON, an individual,<br><br>Defendants. | Civil Action No.   2:21-cv-408<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

NOW COMES the Plaintiff S & S COMMUNICATION SERVICES, INC., and files this Complaint against Defendants CLEARFIBER, INC., DBI NETWORKS, LLC, HENSON, LLC, and TIMOTHY CHAD HENSON, and in support thereof avers as follows:

**I.   NATURE OF THE CASE**

1.  Plaintiff brings this action under 18 U.S.C. Section 1961, *et seq.* ("Racketeer Influenced and Corrupt Organization Act" or "RICO") to secure actual, consequential, trebled, and exemplary damages, restitution, disgorgement of ill-gotten gains, and other equitable relief which this honorable Court deems just and proper for the unlawful and egregious acts, omissions and practices by Defendants, and each of them, alleged herein.

2.  Defendants are engaged in a criminal enterprise to victimize Plaintiff, other small businesses, and government entities, through an unlawful pattern of mail fraud, wire fraud, and the

1

submission of false claims for payment to the government. Defendants submitted fraudulent invoices for payment to government entities, purportedly from Defendant's subcontractors with fabricated sums, with the intent of retaining the fraudulent sums for its own use, and refusing to pay Plaintiff and other similarly situated victims for services performed and materials received. Defendants have engaged in these illegal, abusive, and unlawful business practices, with the specific intent to deceive and defraud Plaintiff, other victims, and federal and state governments.

3. Defendants engaged in a pattern of racketeering activity across state lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts, including but not limited to wire fraud and mail fraud pursuant to 18 U.S.C. §§ 1341, 1344, 1951, 1961, among other violations of federal and state law, as alleged herein.

## II.   PARTIES

4. Plaintiff S&S Communication Services, Inc. ("S&S") at all material times mentioned herein, is and was a Pennsylvania corporation regularly doing business in Greene County, Pennsylvania, with its principal place of business located in Acme, Pennsylvania 15610.

5. Upon information and belief, Defendant ClearFiber, Inc. ("ClearFiber") is a corporation registered under the laws of the State of West Virginia, with its executive office located at 364 Patteson Dr., #230, Morgantown, West Virginia 26505.

6. Upon information and belief, Defendant DBI Networks, LLC ("DBI") is a West Virginia limited liability company with its principal place of busines at 2514 Sun Trail, Morgantown, West Virignia, 25505.

7. Upon information and belief, Defendant Henson, LLC is a West Virginia limited liability company with its principal place of busines at 2514 Sun Trail, Morgantown, West Virignia, 25505.

8. Upon information and belief, Defendant Timothy Chad Henson ("Henson") is an adult individual residing in Parkersburg, West Virginia. Upon information and belief, Henson is the owner and manager of DBI Networks LLC, ClearFiber, Inc., and Henson LLC. Defendants ClearFiber, DBI, Henson LLC, and Henson are hereinafter collectively referred to as "Defendants."

### III.   JURISDICTION

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because it is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1965, as Plaintiff brings claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., and the remaining claims in this action form part of the same case and controversy pursuant to 28 U.S.C. §1367.

11. This Court has personal jurisdiction over Defendants because Defendants are transacting and doing business in the State of Pennsylvania and have continuous and systematic contacts in this District, and Defendants contracted with Plaintiff in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Complaint occurred in this District.

### IV.   COMMON ALLEGATIONS

**A. Defendants Defrauded S&S and Submitted Fraudulent Claims to the Government.**

13. Plaintiff S&S is a family-owned utility services company that has been providing contract services in Pennsylvania for over thirty years.

14.     In or around September of 2020, Defendants contracted with Plaintiff for telecommunications infrastructure services, including but not limited to, staking, inspecting, and splicing fiber optic cables to expand telecommunication network infrastructure in Greene County, Pennsylvania (the "Services").

15.     Plaintiff agreed to carry out the Services for Defendants, and performed the Services in Greene County, Pennsylvania from in or around September to October 2020. Defendants agreed to send payment within thirty days from the receipt of each invoice from Plaintiff.

16.     On or around September 18, 2020, Plaintiff sent two invoices to Defendants for the Services performed. Attached hereto as **Exhibit A** is a true and correct copy of Invoice No. CF-002 sent to Defendants, in the amount of $10,434.50.  Attached hereto as **Exhibit B** is a true and correct copy of Invoice No. CF-003 sent to Defendants, in the amount of $10,382.60.

17.     On or around October 12, 2020, Plaintiff sent an addition two (2) invoices for the Services performed.  Attached hereto as **Exhibit C** is a true and correct copy of Invoice No. CF-004 sent to Defendants, in the amount of $7,779.40.  Attached hereto as **Exhibit D** is a true and correct copy of Invoice No. CF-005 sent to Defendants, in the amount of $12,141.10

18.     The four invoices that S&S sent to Defendants (the "Invoices") in total were in the amount of $40,737.60.

19.     Defendant Henson acknowledged receipt and communicated with Plaintiff about the Invoices. After receipt of the Invoices, Henson, along with other agents of ClearFiber, upon information and belief, at the direction of Henson, repeatedly represented to S&S that the Invoices would be paid in full.

20. In early September 2020, Henson requested a blank form invoice from S&S. Henson represented that he needed a blank S&S form invoice so he could generate an invoice that would ensure that payment to S&S could be made within the thirty-day period the Parties agreed to. Henson further represented that he would generate the invoice so he could submit it for payment that same week, so that payment to S&S would be made within thirty days. Henson stated that if the invoice was not submitted that same week, Plaintiff would have to wait an additional thirty days for payment. Per Defendants' request and based on Henson's representations, Plaintiff sent Defendants a blank S&S invoice.

21. In or around the third week of September 2020, Plaintiff requested, for its own records, a copy of the final invoice Henson had generated and submitted for payment. In response, Defendants sent a copy of an invoice in the amount of $135,007.96— an amount significantly higher than the amounts originally invoiced by S&S (the "Fraudulent Invoice"). Attached hereto as **Exhibit E** is a true and correct copy of the Fraudulent Invoice.

22. The Fraudulent Invoice that Defendant Henson generated on the form S&S invoice included inaccurate descriptions and prices of the Services performed by S&S.

23. The Fraudulent Invoice included descriptions of purported work performed in West Virginia, although S&S had performed the Services in Pennsylvania. The Fraudulent Invoice also included a line item for impermissible taxes in the amount of $7,641.96 that S&S never charged on their original invoices.

24. After receipt of the Fraudulent Invoice, Plaintiff informed Defendants that the stated amount on the Fraudulent Invoice was not accurate and did not state the correct amount S&S charged for the Services performed.

25. In or around early 2020, upon information and belief, Defendants obtained a $1.96 million federal grant from the United States Department of Agriculture Rural Development ("USDA") for the construction of broadband network infrastructure in West Virginia.

26. Upon information and belief, in 2020, Defendants also obtained a grant from the Greene County Industrial Development Corporation ("GCIDC"), in the amount of $200,000 for the Greene County Broadband Project.

27. Upon information and belief, Defendants submitted the Fraudulent Invoice to the USDA and/or the GCIDC, and/or other related government organizations for payment.

28. Upon information and belief, Defendant Henson intentionally inflated the costs and taxes on the Fraudulent Invoice he generated in order to defraud Plaintiff and government entities to obtain amounts from the grant program(s) that were never actually incurred by Defendants.

29. Upon information and belief, Defendants submitted fraudulent invoices for payment with fabricated sums and services, with the intent of retaining the fraudulent sums for its own use, and refusing to pay Plaintiff, and other similarly situated victims, for services performed and materials received. Moreover, Defendants acted with the intent of creating criminal liability for Plaintiff, and shielding itself from liability, with the use of Plaintiff's form invoice.

30. To date, Defendants have refused to explain the contents of the Fraudulent Invoice, and continue to refuse to send payment to Plaintiff for the Services performed.

**B. Defendants Have Engaged in a Pattern of Criminal Fraud Against Multiple Victims.**

31. Upon information and belief, Defendants have engaged in a pattern of fraudulent conduct in performing telecommunication and infrastructure services, spanning years and damaging multiple victims.

32. Defendant Henson is listed as the owner and manager of ZaZoom, Smartnet, Towerlink, and Kvant—all companies that provide, upon information and belief, telecommunication and infrastructure services.

33. In or around 2016, upon information and belief, Defendant Henson and ZaZoom were being investigated by the Marietta Police Department and Washington County Sherriff's Office for theft of services related to telecommunications services[1]. The lead investigator, Marietta Police Officer Rhett Walters, stated that the "investigation involve[d] activities by the company that have occurred since early August of [2015]" and that "the police department was initially alerted by a local business to the alleged theft of services[2]." Officer Rhett also stated that "[t]his could impact hundreds, possibly thousands of people in the city and county." *Id.*

34. In or around April 2020, another Pennsylvania company, Comstar Supply, Inc. ("Comstar") filed a complaint against Defendants DBI Networks, ClearFiber, and Henson in the Monongalia Circuit Court in West Virginia, alleging that Defendants ordered materials from Comstar and agreed to the pricing, yet refused to pay Comstar after Defendants had received the materials.

35. Upon information and belief, at least three other Pennsylvania companies have substantially similar claims against Defendants in the past year alone. Defendants, upon information and belief, defrauded these Pennsylvania companies in a substantially similar manner as Plaintiff.

---

[1] *ZaZoom: New Name, Old Woes*, THE MARIETTA TIMES, (June 1, 2016), https://www.mariettatimes.com/news/local-news/2016/04/zazoom-new-name-old-woes/ (last visited Mar. 29, 2021).
[2] *Investigation Continues into ZaZoom Internet Services*, THE MARIETTA TIMES, (June 1, 2016), https://www.mariettatimes.com/news/local-news/2016/06/investigation-continues-into-zazoom-internet-services/ (last visited Mar. 29, 2021).

36. Notably, in April 2019, the city council of Star City, West Virginia noted in council meeting minutes that Defendant ClearFiber "has bounced 2 checks totaling $4,200 to the city" and that "[i]t was also learned Chad Henson has over 300k [sic.] in state liens against him[3]."

37. Defendants, upon information and belief, contracted with numerous small businesses in multiple states for telecommunication infrastructure services and materials, received the benefits of those contracts, and used those contracts to submit fraudulent invoices to government entities for reimbursement under federal and state funded grant programs, with the intent of retaining the fraudulent sums for its own use, and refusing to pay Plaintiff and other similarly situated victims for services performed and materials received. Defendants, upon information and belief, intentionally and fraudulently retained the money paid to them under the grant programs, and intentionally and fraudulently retained the benefits of services and materials from small business owners while refusing to pay for the materials received and services rendered.

## COUNT I

## CIVIL RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"); 18 U.S.C. § 1962 *et seq.*

38. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

39. Each Defendant is a RICO "person" as defined in 18 U.S.C. § 1961.

40. Defendants ClearFiber, DBI, Henson, LLC, and Henson make up a RICO "enterprise" as defined in 18 U.S.C. §§ 1961(4) and 1962, which were engaged in activities affecting interstate commerce at all times relevant to this Complaint.

---

[3] Minutes of Star City, West Virginia Council Meeting (April 23, 2019, 7:00 p.m.), *available at,* http://www.starcitywv.com/wp-content/uploads/2019/05/DOC050819-05082019101954.pdf (last visited Mar. 29, 2021).

41. The Enterprise has functioned as a continuing unit for the common purpose of achieving the activities herein alleged, including but not limited to: (a) making false representations to Plaintiff and other similarly situated service providers in order to obtain invoices for reimbursement from the State; (b) submitting false claims to the government for payment using invoices purportedly from service providers with fabricated services and inflated amounts substantially higher than the true and correct amounts invoiced for materials and services rendered; (c) obtaining fraudulent sums of money through federal and state grants through the use of fraudulent invoice submissions; (d) processing money received from the federal and state governments procured through fraudulent statements; (e) distributing money procured through the scheme to the enterprise; and (f) retaining all fraudulently obtained sums for Defendant's own benefit and refusing to pay Plaintiff and other service providers for Services performed.

42. The conduct of the Enterprise described herein have obstructed, delayed, or otherwise affected interstate commerce.

43. Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including but not limited to the following predicate acts:

**Mail and Wire Fraud under 18 U.S.C. §§ 1341 and 1343**

44. The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, the Enterprise engaged in an intentional scheme to defraud Plaintiff, other small businesses, and government entities to obtain money through false or fraudulent pretenses, representations, promises, and intentional concealment. It was reasonably foreseeable to each member of the Enterprise that the mail and/or wires would be used in

furtherance of the scheme, and the mail and/or wires were in fact used to further execute the scheme to defraud Plaintiff and the government.

45. For the purposes of furthering and executing the scheme to defraud, the Enterprise regularly transmitted or caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds (the "Wirings"), and also regularly caused matters and things to be placed in a post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier (the "Mailings").

46. The Enterprise used the wires and/or mails for the above stated purposes to further and execute the scheme to defraud Plaintiff. For example, every time the Enterprise sent via mail or wire or other electronic means fraudulent communications and invoices for requests for money, Defendants furthered the Enterprise.

47. The Wirings addressed above each constitute predicate acts of wire fraud in furtherance of the Enterprise in violation of 18 U.S.C. § 1343 (wire fraud) because they were done, in whole or in part, via the use of writings, signs, signals, pictures, and sounds transmitted by means of wire communications in interstate commerce, including wire funds transfers, email, and telephone communications.

48. The foregoing activities, that occurred on a regular basis spanning several years each constitute predicate acts in furtherance of the unlawful scheme in violation of 18 U.S.C. § 1341 (mail fraud) because they were done, in whole or in part, via the use of private or commercial interstate carriers or the Postal Service. The Enterprise's conduct poses a threat of continued criminal activity and/or has extended over a substantial period of time.

**Transportation of Money Taken by Fraud under 18 U.S.C. § 2314**

49.     Defendants' pattern of racketeering activity consisted of violations of the National Stolen Property Act, 18 U.S.C. § 2314. Specifically, the Enterprise engaged in an intentional scheme to defraud Plaintiff and transported, transmitted and/or transferred in interstate and foreign commerce money, of the value of $5,000 or more, knowing the same to have been taken by fraud, and having devised and/or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, promises, and/or intentional concealment that induced Plaintiff to travel in interstate and/or foreign commerce in the execution of a scheme or artifice to defraud Plaintiff of money or property having a value of $5,000 or more.

50.     All of the predicate acts described herein were continuous so as to form a pattern of racketeering activity in that: (a) by the nature of the scheme, it posed a distinct threat of on-going criminal activity that would continue indefinitely; (b) Defendants engaged in the predicate acts over a substantial period of time and such predicate acts have become the Defendants' regular way of conducting business. Further, Plaintiff believes that discovery in this case will result in disclosure of facts showing that Defendants have perpetrated a pattern of submitting fraudulent requests for payment in order to obtain significant amounts of money for their own benefit from the government, and converting funds duly owed to Plaintiff and other victims of the scheme.

51.     Defendants together conspired, agreed, intended, adopted and/or conducted the goal of furthering or facilitating, that income, in the form of fraudulently obtained payments for purported telecommunications services induced via false pretenses, fraudulent misrepresentations, wire fraud, and mail fraud, would be received by Defendants, and such income would be derived, directly or indirectly, from a pattern of activity unlawful under 18 U.S.C. § 1961, in which

Defendants participated as principals, namely the multiple, repeated, and or continuous predicate acts as alleged above.

52. In violation of 18 U.S.C. § 1962 (a), an objective of Defendants' conspiracy was and is that income, or the proceeds of such income, would be used and invested in the operation of ClearFiber and DBI Networks, and the Enterprise for illegitimate purposes, including the fraudulent use of fake invoices to induce payments from the government, and diverting funds owed to Plaintiffs and similarly situated service providers, affecting interstate commerce.

53. In violation of 18 U.S.C. § 1962 (b), Defendants, together conspired, agreed, intended, and/or adopted the goal of furthering or facilitating to acquire or maintain, directly or indirectly, an interest in or control of the Enterprise through a pattern of unlawful activity under 18 U.S.C. § 1961, in which Defendants participated as principals, namely the multiple repeated, and/or continuous predicate acts as alleged above.

54. In violation of 18 U.S.C. § 1962 (c), Defendants were and are associated with the Enterprise and have conducted and/or participated directly or indirectly in the conduct of the Enterprise's affairs, including but not limited to, in the management and operation of the affairs of the Enterprise, through a pattern of unlawful activity under 18 U.S.C. § 1961, namely the multiple repeated, and/or continuous predicate acts as alleged above, including by, without limitation: (a) making false representations to Plaintiff, other service providers, and government entities; (b) making false claims for payment to the State using fraudulent and inaccurate invoices; (c) processing the fraudulently obtained sums procured through false statements, and (d) diverting money owed to Plaintiff for services rendered and instead distributing the money fraudulently procured through the scheme to Defendants.

55.     In violation of 18 U.S.C. § 1962 (d), each of the Defendants knew about and agreed to facilitate the scheme alleged above, including by, without limitation: a) making false representations to Plaintiff, other service providers, and government entities; (b) making false claims for payment to government entities using fraudulent and inaccurate invoices; (c) processing the fraudulently obtained sums procured through false statements, and (d) diverting money owed to Plaintiff for services rendered and instead distributing the money fraudulently procured through the scheme to Defendants.

56.     As a direct and proximate result of the overt predicate acts of racketeering of the Enterprise in violation of 18 U.S.C. § 1962, Plaintiff has been injured in his business and/or property within the meaning of 18 U.S.C. § 1964(c). The Enterprise defrauded Plaintiff, other service providers, and government entities, and transported across interstate lines via wired monetary transactions approximately $40,737.60 among other losses suffered by Plaintiff, and upon information and belief, approximately $135,007.96 from government entities.

57.     As a result of the Enterprise's violation of 18 U.S.C. § 1962, Defendants, and each of them, is liable to Plaintiff for his losses in an amount to be determined at trial.

58.     In addition, pursuant to 18 U.S.C. § 964(c), Plaintiff is entitled to recover threefold his damages plus costs and attorney fees from Defendants.

## COUNT II

## FRAUD

59.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     As described in detail above, Defendants made numerous false representations to Plaintiff and involved Plaintiff in false claims sent to the government, including but not limited to

fraudulent requests for payment. Defendants also represented to Plaintiff they would use the blank invoices from Plaintiff for a legitimate purpose, when in fact, such representations were false when made because Defendants intended to use the blank invoices for fraudulent and illegal purposes.

61. Defendants knew that these representation were false. Plaintiff reasonably relied on Defendants' fraudulent misrepresentations to its own detriment.

62. As a direct result of Defendants' intentional misrepresentations, Plaintiff has suffered general, special, consequential, incidental, and compensatory damages. As a result, Defendants are liable to Plaintiff for his losses in an amount to be determined at trial.

63. In doing the acts herein alleged, Defendants, and each of them, acted fraudulently, willfully, maliciously, presently, and with callous disregard of Plaintiff's rights and interest in Plaintiff's property, subjecting Defendants to punitive damages according to proof at trial.

## COUNT III
## BREACH OF CONTRACT

64. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

65. Defendant's refusal and failure to pay Plaintiff for Services rendered, as set forth above, constitutes a breach of contract.

66. Plaintiff performed or substantially performed all of its obligations under the contract.

67. In contrast, Defendants materially breached their contractual obligations by refusing to pay Plaintiff for services rendered.

68. As a result of Defendant's breach of contract, Plaintiff has suffered damages in an amount in excess of $75,000.

69. Plaintiff is entitled to all amounts owed under the contract(s), plus interest, costs, and attorneys' fees associated with Defendant's breach.

## COUNT IV
## UNJUST ENRICHMENT/QUANTUM MERUIT

70. Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

71. As detailed above, Plaintiff furnished the Services to Defendant.

72. The Services were furnished by Plaintiff with the reasonable expectation that it would be paid for the Services.

73. Defendant requested and accepted the Services expecting to pay for them, or under such circumstances that it knew or should have known that Plaintiff expected to be paid.

74. By failing to pay Plaintiff the sum owed to it, Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For compensatory damages, the exact amount to be determined at trial;

2. For treble the damages sustained by Plaintiff, including but not limited to the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

3. For general damages, consequential damages, and special damages, according to proof;

4. For punitive damages according to proof in an amount to be determined at trial and sufficient to punish Defendant and deter them and others from similar wrongful conduct;

5. For prejudgment and post judgment interest;

6. For Attorney's fees and costs of suit incurred in connection with this action;

7. For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

8. For all other equitable relief, including disgorgement by Defendants of all sums obtained pursuant to the unlawful conduct described herein;

9. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: March 29, 2021

_____
Phillip C. Hook, Esq. (Pa. I.D. No. 324035)
Joy D. Llaguno, Esq. (Pa. I.D. No. 327120)
**HOOK & HOOK PLLC**
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-802-7144
Fax:    724-802-7959
Email: phook@hooklaw.com
          jllaguno@hooklaw.com

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all counts of this Complaint that are so triable.

Date: March 29, 2021

Respectfully submitted,

_____
Phillip C. Hook, Esq. (Pa. I.D. No. 324035)
Joy D. Llaguno, Esq. (Pa. I.D. No. 327120)
**HOOK & HOOK PLLC**
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-802-7144
Fax:    724-802-7959
Email: phook@hooklaw.com
           jllaguno@hooklaw.com